CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Elliott Montgomery, Esq., SBN 279451
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
ElliottM@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Raul Uriarte-Limon**,<br><br>    Plaintiff,<br><br> v.<br><br>**In-N-Out Burgers,** a California Corporation; and Does 1-10,<br><br>    Defendants. | **Case No**. 2:17-CV-05431-GW (KSX)<br><br>**First Amended Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Raul Uriarte-Limon complains of Defendants In-N-Out Burgers, a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who uses a wheelchair for mobility.

2. Defendant In-N-Out Burgers, a California Corporation, owned the real property located at or about 1851 Indian Hill, Pomona, California, in

1  November 2016.

2  3.  Defendant In-N-Out Burgers, a California Corporation, owns the real property located at or about 1851 Indian Hill, Pomona, California, currently.

4.  Defendant In-N-Out Burgers, a California Corporation, owned the In-N-Out Burgers restaurant located at or about 1851 Indian Hill, Pomona, California, in November 2016.

5.  Defendant In-N-Out Burgers, a California Corporation, owns the In-N-Out Burgers restaurant ("Restaurant") located at or about 1851 Indian Hill, Pomona, California, currently.

6.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.  Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. The Plaintiff went to the Restaurant in November 2016 to eat.

11. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

12. Restrooms are one of the facilities, privileges, and advantages offered by the Restaurant.

13. Unfortunately, the restroom doorway clear passage width was 23 inches and inaccessible to wheelchair users.

14. Currently, the restroom doorway clear passage width was 23 inches and inaccessible to wheelchair users.

15. Additionally, and even though the plaintiff was able to overcome the barrier, the transaction counter is 39 inches in height. There is no lowered, 36 inch portion of counter for use by persons in wheelchairs.

16. Currently, the transaction counter is 39 inches in height. There is no lowered, 36 inch portion of counter for use by persons in wheelchairs.

17. Plaintiff personally encountered these barriers.

18. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

19. Furthermore, although Plaintiff did not personally confront all of the following barriers, Plaintiff alleges that the parking spaces, path of travel and restrooms are also not accessible to wheelchair users.

20. Parking spaces are one of the facilities, privileges, and advantages offered by the Restaurant.

21. The slope within the parking space measures between 2.8% to 3.9%.

22. The slope within the access aisle measures 3.4%.

23. The paint on the accessible parking space and the access aisle is faded and it indicates that the accessible space and access aisle has been restriped and moved to the North.

24. Neither the driveway nor the accessible parking space have a "Minimum Fine $250" sign.

25. Neither the driveway nor the accessible parking space have a tow-away sign.

26. Paths of travel are one of the facilities, privileges, and advantages offered by the Restaurant.

27. There is no demarcated accessible route from the sidewalk along Indian Hill Boulevard to the transaction counter.

28. To reach the counter from the sidewalk, it is necessary to walk through the driveway and up a curb ramp.

29. The running slope along the path of travel is 8.8% and the cross-slope measures 3.2%.

30. The demarcated path of travel from the accessible parking space to the transaction counter has a 16.3% running slope at the concrete valley gutter and 5.7% cross slope where it passes a bollard, as well as a 6.5% cross slope along the walk farther to the East.

31. Restrooms are one of the facilities, privileges, and advantages offered by the Restaurant.

32. The Restaurant has two gender neutral restrooms located on the West side of the building.

33. The slope of the exterior landing is 4.7% at the north restroom door and 5.3% at the South restroom door.

34. Both the restroom doors require 6-7 pounds of opening force.

35. Both the restroom doors close from a fully open position to within 12

degrees of the jamb in 2-3 seconds.

36. Both the restrooms are 58 inches long.

37. The South restroom is 58 inches deep and the North restroom is 48 inches deep.

38. The seat cover dispenser in both the restrooms is located above the rear grab bar and the top of the slot is 48 inches to 51 inches above the floor.

39. The soap dispenser in both the restrooms are 43 inches to 45 inches above the floor.

40. The paper towel dispensers in both the restrooms are 47 inches to 49 inches above the floor.

41. The centerline of the toilets is 14 ½ inches to 15 ½ inches from the adjacent wall and there is no 60 inches diameter turning space in either restroom.

42. There is 15 inches in front of the toilet in the north restroom and 24 ½ inches clear space in front of the toilet in the South restroom.

43. The toilet paper dispenser in the South restroom is 19 inches in front of the toilet and the rear grab bar is 24 inches long in both restrooms.

44. Plaintiff would like to return and patronize the Restaurant but will be deterred from visiting until the defendants cure the violations.

45. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

46. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

47. For example, one of the common barrier removal projects is to modify transaction counters so that there is an accessible portion of counter. This is a simple architectural and construction task, well within the capabilities of any general contractor, and done with a modicum of expense and effort.

48. Plaintiff is and has been deterred from returning and patronizing the Restaurant because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

49. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

50. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

51. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

52. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by

individuals with disabilities. 42 U.S.C. § 12183(a)(2).

53. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

54. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

55. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

56. Here, no such accessible transaction counter has been provided in violation of the ADA.

57. Slopes not steeper than 1:48 shall be permitted 2010 Standards § 502.4 exception; California Business Code ("CBC") § 11B-502.4 exception. Here, the slope within the parking space measures between 2.8% to 3.9%. The slope within the access aisle measures 3.4%.

58. Access aisles shall be marked so as to discourage parking in them. 2010 Standards § 502.3.3. Access aisles shall be marked with a blue painted borderline around their perimeter. The area within the blue borderlines shall be marked with hatched lines a maximum of 36 inches on center in a color contrasting with that of the aisle surface, preferably blue or white. The words "NO PARKING" shall be painted on the surface within each access aisle in

white letters a minimum of 12 inches in height and located to be visible from the adjacent vehicular way. Access aisle markings may extend beyond the minimum required length. CBC § 11B-502.3.3. Here, the paint on the accessible parking space and the access aisle is faded and it indicates that the accessible space and access aisle has been restriped and moved to the North.

59. The additional sign shall clearly state in letters with a minimum height of 1 inch (25 mm) the following:

"Unauthorized" vehicles parked in designated accessible spaces not displaying distinguishing placards or special license plates issued for persons with disabilities will be towed away at the owner's expense. Towed vehicles may be reclaimed at: _____ or by telephoning _____."

Blank spaces shall be filled in with appropriate information as a permanent part of the sign. CBC § 11B-502.8.2. Here, neither the driveway nor the accessible parking space has the "Minimum Fine $250" sign. Neither the driveway nor the accessible parking space has the tow-away sign.

60. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve. 2010 Standards § 206.2.1; CBC § 11B-206.2.1. Here, there is no demarcated accessible route from the sidewalk along Indian Hill Boulevard to the transaction counter. To reach the counter from the sidewalk, it is necessary to walk through the driveway and up a curb ramp.

61. The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of walking surfaces shall not be steeper than 1:48. 2010 Standards § 403.3; CBC § 11B-403.3. Here, the running slope along the path of travel is 8.8% and the cross-slope measures 3.2%. The demarcated path of

travel from the accessible parking space to the transaction counter has a 16.3% running slope at the concrete valley gutter and 5.7% cross slope where it passes a bollard, as well as a 6.5% cross slope along the walk farther to the East.

62. Swinging doors and gates shall have maneuvering clearances complying with Table 404.2.4.1. 2010 Standards § 404.2.4.1. Here, the slope of the exterior landing is 4.7% at the North restroom door and 5.3% at the South restroom door.

63. Door closers and gate closers shall be adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum. 2010 Standards § 404.2.8.1; CBC § 11B-404.2.8.1. Here, both the restroom doors close from a fully open position to within 12 degrees of the jamb in 2-3 seconds.

64. Fire doors shall have a minimum opening force allowable by the appropriate administrative authority. The force for pushing or pulling open a door or gate other than fire doors shall be as follows:

1. Interior hinged doors and gates: 5 pounds (22.2 N) maximum.
2. Sliding or folding doors: 5 pounds (22.2 N) maximum. These forces do not apply to the force required to retract latch bolts or disengage other devices that hold the door or gate in a closed position. 2010 Standards § 404.2.9.

The force for pushing or pulling open a door or gate shall be as follows:

1. Interior hinged doors and gates: 5 pounds (22.2 N) maximum.
2. Sliding or folding doors: 5 pounds (22.2 N) maximum.
3. Required fire doors: the minimum opening force allowable by the appropriate administrative authority, not to exceed 15 pounds (66.7 N).
4. Exterior hinged doors: 5 pounds (22.2 N) maximum.

These forces do not apply to the force required to retract latch bolts or

disengage other devices that hold the door or gate in a closed position. CBC § 11B-404.2.9. Here, both the restroom doors require 6-7 pounds of opening force.

65. Turning space complying with 304 shall be provided within the room. 2010 Standards § 603.2.1; CBC § 11B-603.2.1. Here, both the restrooms are 58 inches long. The South restroom is 58 inches deep and the North restroom is 48 inches deep.

66. The water closet shall be positioned with a wall or partition to the rear and to one side. The centerline of the water closet shall be 16 inches minimum to 18 inches maximum from the side wall or partition, except that the water closet shall be 17 inches minimum and 19 inches maximum from the side wall or partition in the ambulatory accessible toilet compartment specified in 604.8.2. Water closets shall be arranged for a left-hand or right-hand approach. 2010 Standards § 604.2. The water closet shall be positioned with a wall or partition to the rear and to one side. The center-line of the water closet shall be 17 inches minimum to 18 inches maximum from the side wall or partition, except that the water closet shall be 17 inches minimum and 19 inches maximum from the side wall or partition in the ambulatory accessible toilet compartment specified in Section 11B-604.8.2. Water closets shall be arranged for a left-hand or right-hand approach. CBC § 11B-604.2. Here, the centerline of the toilets is 14 ½ inches to 15 ½ inches from the adjacent wall and there is no 60 inches diameter turning space in either restroom.

67. Clearance around a water closet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. 2010 Standards § 604.3.1. Clearance around a water closet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured

perpendicular from the rear wall. A minimum 60 inches wide and 48 inches deep maneuvering space shall be provided in front of the water closet. CBC § 11B-604.3.1. Here, there is 15 inches in front of the toilet in the North restroom and 24 ½ inches clear space in front of the toilet in the South restroom.

68. Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches maximum above the finish floor. CBC § 11B-603.5. Here, the seat cover dispenser in both the restrooms is located above the rear grab bar and the top of the slot is 48 inches to 51 inches above the floor. The soap dispenser in both the restrooms are 43 inches to 45 inches above the floor. The paper towel dispensers in both the restrooms are 47 inches to 49 inches above the floor.

69. The rear wall grab bar shall be 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. 2010 Standards § 604.5.2; . CBC § 11B-604.5.2. Here, the toilet paper dispenser in the South restroom is 19 inches in front of the toilet and the rear grab bar is 24 inches long in both restrooms.

70. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

71. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

72. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

73. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

74. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

75. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act and/or the California Disabled Persons Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 15, 2018      CENTER FOR DISABILITY ACCESS

By:   /s/ Elliott Montgomery
Elliott Montgomery
Attorneys for plaintiff